# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**<br>**George H. Fallon Building**<br>**31 Hopkins Plaza, Suite 1432**<br>**Baltimore, Maryland 21201** | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) ) | **COMPLAINT AND JURY TRIAL DEMAND** |
| **v.** | ) ) ) | |
| **ERICKSON LIVING MANAGEMENT, LLC,**<br>**701 Maiden Choice Lane**<br>**Catonsville, Maryland 21228**<br>**Defendant.** | ) ) ) ) ) | **Civil Action No.** |

---

## NATURE OF THE ACTION

This is an action under Title V of the Americans with Disabilities Act of 1990, as amended through the ADA Amendments Act of 2008 (ADA), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on retaliation and to provide appropriate relief to Felecia West ("West"), who was adversely affected by such practices.  The Equal Employment Opportunity Commission ("the Commission" or "EEOC") alleges that Defendant Erickson Living Management, LLC ("Defendant") unlawfully retaliated against West by terminating her employment after she complained of disability-based discrimination against one of her subordinates, in violation of the ADA.

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343,

and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) & (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) & (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

## PARTIES

3.      Plaintiff, EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) & (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) & (3).

4.      At all relevant times, Defendant Erickson Living Management, LLC has continuously been a Maryland Corporation doing business in the State of Maryland and the City of Catonsville, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

2

## ADMINISTRATIVE PROCEDURES

7.     More than thirty days before the filing of this lawsuit, Felecia West filed a charge of discrimination with the Commission alleging violations of Title V of the ADA by Defendant.

8.     On September 26, 2018, the Commission issued a Letter of Determination to Defendant finding reasonable cause to believe that Defendant had violated the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to provide appropriate relief.

9.     The Commission engaged in communications with Defendant to try and remedy the discriminatory practices described in the Letter of Determination.

10.     The Commission was unable to secure a conciliation agreement from Defendant that was acceptable to the Commission.

11.     On February 4, 2019, the Commission issued a Notice of Failure of Conciliation to Defendant.

12.     All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13.     Defendant engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. 12203(a) by discharging Felecia West in retaliation for her opposing unlawful discrimination under the ADA.

a.     In October 2014, Defendant hired West as Director of Talent Development, Health Services and Global Programs.

b.     As Director of Talent Development, Health Services and Global Programs, West's

job duties included creating and managing trainings for healthcare staff at Defendant's several assisted living community locations nationwide. She also directly supervised the Director of Health Services Talent Development (hereinafter "West's subordinate" or "her subordinate").

c.      During her tenure with Defendant, West consistently received strong performance reviews.

d.      In August 2016, Janiel Adams, West's supervisor, informed West that her subordinate had problems with her "presentation style." This was at odds with West's observations and the employee's performance evaluations.

e.      Although West requested to work with her subordinate on any perceived issues with her presentation style in lieu of more formal measures, Adams placed her on a formal Performance Improvement Plan (PIP) in early October 2016. Adams collaborated on that plan with Bettina Suarez ("Suarez") the Vice President of Health Services.

f.      On or around October 7, 2016, West's subordinate told West that she had filed an intermittent leave request under the FMLA to accommodate doctors' appointments related to her disability, which she disclosed to West as anxiety and bipolar disorder. She also told West she was concerned that the manifestations of these two conditions was contributing to how others in the workplace—particularly those who took issue with her public speaking and presentation style—were perceiving her. As part of her FMLA request, West's subordinate submitted documentation of her disability from her treating doctor.

g.      On or around October 7, 2016 Defendant approved West's subordinate's FMLA accommodation request. West discussed the accommodations approval with Adams in-

4

person shortly thereafter. West requested that her subordinate not be placed on the PIP because she thought her subordinate's underlying disability could be resulting in some of her complained of behaviors and that the PIP would just exacerbate these difficulties.

h.      Adams told West that it "didn't matter" that her subordinate had a disability and that she was still going on the PIP.

i.      West's subordinate followed the PIP and West monitored her progress, regularly reporting to and meeting with both Adams and Suarez about it.

j.      In late November 2016, Adams told West that her subordinate's six-week plan would conclude on its end date in early December 2016. But when that date came Suarez raised new concerns about the employee's performance, claiming that members of her team were the source of those concerns.  Adams then decided to continue West's subordinate on the PIP.

k.      After learning that Adams was going to extend her PIP, West's subordinate followed up with members of Suarez's team. But none of them indicated they had ongoing concerns about her job performance. In fact, one member of the Health Services team, Melissa Gasker, told West's subordinate she had not complained about her work at all. Gasker also sought out West to tell her the same thing and then sent a follow-up email to Adams reiterating that she had been pleased with West's subordinate's performance working with the Health Services team.

l.      On or around December 6, 2016, West complained to Heather Cossiter in HR that her subordinate had been singled out for different treatment because of manifestations of her documented disabilities. During this meeting, West also expressed concerns that she would

be retaliated against for reporting what she believed was a discriminatory abuse of the PIP system.

m.      West's subordinate also met with Cossiter shortly thereafter and expressed similar concerns about her disability and the PIP. In addition, on or about December 9, 2016, she formally complained to Defendant's "Values Hotline" over the phone and via email.

n.      After their initial meetings with Human Resources no one ever followed up with either West or her subordinate about their complaints.

o.      But on December 12, 2016, Adams informed West that her subordinate's PIP would not be continued after all. She gave no reason for the change.

p.      Throughout December 2016, West worked with both Adams and Suarez on project planning for 2017 including discussions on how she would get more involved with the Health Services Department. Adams and Suarez told West that she should start relocating her office to the Health Services Department floor so that she would be closer to the Health Services team to collaborate on these projects, which West did: she submitted requests for a desk and a phone for her new office.

q.      On January 17, 2017, Adams informed West and her subordinate that they were being terminated, citing a "restructuring" within the company.

r.      This was the first time West and her subordinate had heard any mention of a restructuring. And they were the only two employees terminated as a result of this restructuring.

s.      At no time did Defendant offer West an alternative position even though there were two available on the Health Services Team for which she was qualified as well as other

positions throughout the company.

t.      The day after West and her subordinate were terminated Defendant posted openings for two new positions online, which incorporated some of the work that West had been project planning for 2017.  Neither of these positions were offered to West or her subordinate as an alternative to termination.

14.     The effect of the practices complained of in paragraph 13 above has been to deprive West of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected conduct under the ADA.

15.     The effect of the practices complained of in paragraph 13 above has been to deprive West of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in lost wages, emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, because she engaged in protected conduct under the ADA.

16.     The unlawful employment practices complained of in paragraph 13 above were intentional.

17.     The unlawful employment practices complained of in paragraph 13 above were done with malice or with reckless indifference to West's federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from retaliating against individuals for exercising rights protected by the ADA;

B.    Order Defendant to institute and carry out policies, practices, and programs that eradicate the effects of its past and present unlawful employment practices;

C.    Order Defendant to make whole West by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D.    Order Defendant to make whole West by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to any job search expenses and other pecuniary losses, in amounts to be determined at trial;

E.    Order Defendant to make whole West by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including pain and suffering, emotional distress, indignity, inconvenience, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial;

F.    Order Defendant to pay West punitive damages for its malicious and reckless conduct, as described above, in an amount to be determined at trial;

G.    Grant such further relief as the Court deems necessary and proper in the public interest; and

H.    Award the EEOC its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

DEBRA M. LAWRENCE
Regional Attorney

MARIA SALACUSE
Supervisory Trial Attorney
Federal Bar No. 15562

LAUREN J. KELLEHER
Trial Attorney

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Baltimore Field Office
George H. Fallon Building
31 Hopkins Plaza, Suite 1432
Baltimore, Maryland 21201
(410) 209-2791 (phone)
(410) 962-2221 (fax)
Lauren.Kelleher@eeoc.gov